**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Legalforce RAPC Worldwide PC, *et al.*, | No. CV-24-03437-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Patent and Trademark Office, *et al.*, | |
| Defendants. | |

Two related motions are at issue. First, Plaintiffs LegalForce RAPC Worldwide P.C. (LegalForce) and Raj Abhyanker have filed a Motion for Preliminary Injunction (Doc. 16). The Defendant United States Patent and Trademark Office (USPTO), Defendant Secretary of Commerce, and Defendant Under Secretary of Commerce and Director of the USPTO combined their response in opposition thereto with a Motion to Dismiss Plaintiffs' Complaint (Doc. 27, MTD). Plaintiffs filed a combined response/reply to Defendants' filing, which the Court will denominate simply as Plaintiffs' Response (Doc. 31, Response), and Defendants filed a Reply. (Doc. 37, Reply).[1] The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court dismisses this action for want of subject matter jurisdiction.

. . .

---

[1] Ten days before Defendants filed their Reply, Plaintiffs submitted a notice and memorandum of supplemental authority (Doc. 34; Doc. 35). Plaintiffs also filed a motion for leave to file a sur-reply (Doc. 39). Plaintiffs' proposed sur-reply, currently lodged at docket number 40, is more a notice of errata than a substantive legal memorandum. The Court perceives no issue with granting it, nor does the Court perceive a need to afford Defendants an opportunity to respond.

I. **Background**

Plaintiffs' Complaint contains numerous allegations, the majority of which are not germane to the matter currently before the Court. The factual predicate of this lawsuit is Plaintiffs' assertion that, since 2017, Defendants have engaged in a targeted campaign of meritless and retaliatory disciplinary actions against Mr. Abhyanker. (*See* Doc. 1, Complaint ¶¶ 1–3; Response ¶¶ 1–3.) However, Plaintiffs state that this lawsuit has very little to do with the facts that gave rise to it. "The instant federal Complaint does not seek to adjudicate any of the above referenced facts. Moreover, Plaintiffs are not asking this Court to decide any issue of patent or trademark law, professional responsibility, or factual guilt or innocence." (Response ¶ 3.) Plaintiffs contend that the USPTO disciplinary apparatus is facially unconstitutional, and that such unconstitutionality is divorced from the specific animus that Mr. Abhyanker has allegedly been subjected to. According to Plaintiffs, their "constitutional claims would remain if the USPTO charged a different attorney, or even if there were no charges at all—they go to '*the very existence and structure*' of the USPTO's disciplinary system." (Response ¶ 3 (emphasis in original).) Although that assertion might beg a standing challenge, the Court quotes it here simply to highlight the avowedly facial nature of Plaintiffs' lawsuit.

The facts that *are* relevant to the instant dispute are as follows. On December 23, 2019, the USPTO filed an administrative disciplinary complaint against Mr. Abhyanker under 37 C.F.R. § 11.34. (Complaint ¶ 23; MTD at 3; Response ¶ 2.)[2] In March of 2022 and April of 2023, an administrative law judge (ALJ), whom the USPTO retained "on loan" from the Department of Housing and Urban Development (HUD), conducted a hearing

---

[2] In ascertaining the facts relevant to this jurisdictional dispute, the Court looks to both Plaintiffs' Complaint and Defendants' Motion to Dismiss. In general, district courts must consider information outside the pleadings when such information bears upon the presence or absence of subject matter jurisdiction. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014). The consideration of extra-pleading evidence normally occurs in the context of "factual" jurisdictional disputes, as opposed to "facial" disputes. *Id.* The parties do not address whether the instant matter is factual or facial, but the Court feels it unnecessary to so distinguish. The facts provided in Defendants' Motion are purely supplementary, offered only to fill in minor gaps left in Plaintiffs' Complaint and not for the purpose of contradicting anything therein. Plaintiffs do not contest Defendants' ability to make supplementary factual allegations, nor do Plaintiffs challenge any particular allegation made by Defendants.

pursuant to 37 C.F.R. § 11.44. (Complaint ¶¶ 29–35; MTD at 3–4.) There were several reasons for the year-long delay between the commencement and conclusion of the hearing, including technical difficulties, a breach of court rules by USPTO personnel, a "Motion for Interlocutory Appeal and Stay pending Resolution of Live Hearing Request" filed by Mr. Abhyanker, a motion to reinstate counsel filed by Mr. Abhyanker, and a "Motion on Hearing Scheduling" filed by Mr. Abhyanker. (Complaint ¶¶ 29–35.)

On November 22, 2024, the ALJ issued an "initial decision" pursuant to 37 C.F.R. § 11.54. (Complaint ¶ 36; MTD at 3–4.) Initial decisions automatically become final decisions unless an appeal is filed within thirty days of the issuance of the initial decision. 37 C.F.R. § 11.54(d). In this case, the ALJ's initial decision did not become final because Mr. Abhyanker filed a motion for reconsideration on December 2 followed by a notice of appeal on December 6. (Complaint ¶ 39; MTD at 4.) In between those two filings, on December 4, Plaintiffs[3] filed the instant lawsuit. Although the ALJ has since denied Mr. Abhyanker's motion for reconsideration, the appeal of the ALJ's decision is still outstanding before the Director of the USPTO. (MTD at 4.)

The Eastern District of Virginia has exclusive jurisdiction to review final USPTO disciplinary decisions. *See* 35 U.S.C. § 32. Here, that jurisdiction has not yet vested because no final USPTO decision exists in this case, as Mr. Abhyanker elected to appeal the ALJ's initial decision rather than permit it to become final. However, Plaintiffs contend that the absence of finality, as well as the absence of any adjudicative authority possessed by the District of Arizona over administrative appeals of USPTO disciplinary decisions, is of no moment in this case because the nature of their claims obviates the need for administrative compliance. In Plaintiffs' view, this lawsuit exists outside the ordinary administrative channels, as it "concerns the overall structure of the proceedings under the [sic] *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), and not on the underlying facts of matter [sic] pending before the [USPTO Director]." (Complaint ¶ 40.)

---

[3] Plaintiffs are Mr. Abhyanker and LegalForce, a law firm owned by Mr. Abhyanker that exists "to enhance access to legal services to first time entrepreneurs and small businesses seeking to protect their intellectual property at an affordable price." (Complaint ¶¶ 6–7.)

- 3 -

Plaintiffs bring four claims. First, they argue that the dual-layer removal protections enjoyed by the ALJ violate Article II of the Constitution and that, as a result, "any actions taken against practitioners under this present structure are invalid and *void ab initio* [sic]." (Complaint ¶ 57.) Second, Plaintiffs contend that the USPTO disciplinary process involves an exercise of judicial power that is offensive to Article III of the Constitution, as well as being violative in its particulars of the Due Process Clause of the Fifth Amendment and the Jury Preservation Clause of the Seventh Amendment. (Complaint ¶¶ 79–80.) Third, Plaintiffs claim that the USPTO's combined function of investigator, prosecutor, and adjudicator violates the Due Process Clause of the Fifth Amendment. (Complaint ¶ 83.) And fourth, somewhat redundantly, Plaintiffs argue that the USPTO disciplinary process violates the Jury Preservation Clause of the Seventh Amendment. (Complaint ¶ 111.) Although Plaintiffs seek some forms of relief that are personal to Mr. Abhyanker's disciplinary proceeding, such as dismissal of the administrative complaint against him and an award of costs and fees, (Complaint ¶ 12(d), (h)), Plaintiffs also seek blanket determinations of facial unconstitutionality, (Complaint ¶ 12(a)–(e)), as well as a nationwide injunction "prohibiting the USPTO from engaging HUD ALJs in proceedings involving core private rights without implementing structural safeguards to ensure impartiality and independence" and "requiring the USPTO to restructure its adjudicative framework to comply with constitutional requirements for jury trials and impartial adjudication in cases involving charges asking for suspension or exclusion," (Complaint ¶ 12(f), (g)).

## II.     Legal Standard

Because federal courts are courts of limited jurisdiction, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). In their briefing asserting that the Court lacks subject matter jurisdiction over this case, Defendants present several arguments as to why Plaintiffs' Complaint must be dismissed and their Motion for Preliminary Injunction

denied. These contentions include the absence of standing, the statutory impropriety of venue, the failure to exhaust administrative remedies, and the non-waiver of sovereign immunity. Each of these arguments depends in whole or in part upon whether Plaintiffs may avail themselves of the Supreme Court's holding in *Axon*. Therefore, the Court begins its analysis with an examination of that landmark case.

### III.   Discussion

#### A.   *Axon*

In *Axon*, the Supreme Court decided two consolidated cases, each of which bore a remarkable similarity to the case at bar. The high court summarized the two consolidated cases as follows.

> In each of these two cases, the respondent in an administrative enforcement action challenges the constitutional authority of the agency to proceed. Both respondents claim that the agencies' administrative law judges (ALJs) are insufficiently accountable to the President, in violation of separation-of-powers principles. And one respondent attacks as well the combination of prosecutorial and adjudicatory functions in a single agency. The challenges are fundamental, even existential. They maintain in essence that the agencies, as currently structured, are unconstitutional in much of their work.

598 U.S. at 180. After describing administrative processes that are analogous to the USPTO's disciplinary framework in all material respects, the Supreme Court described the litigants' refusal to tread the normal agency path.

> The cases before us, though, did not take the above-described course. In each, the respondent in an administrative enforcement action sued in district court prior to an ALJ decision, seeking to enjoin the Commission's proceeding. Each suit charged that some fundamental aspect of the Commission's structure violates the Constitution; that the violation made the entire proceeding unlawful; and that being subjected to such an illegitimate proceeding causes legal injury (independent of any rulings the ALJ might make). Finally, each suit premised jurisdiction on district courts' ordinary federal-question authority—their power, under 28 U.S.C. § 1331, to resolve "civil actions arising under the Constitution, laws, or treaties of the United States." We describe the two cases in turn, but what we have just said they have in common is really all it is necessary to know.

*Axon*, 598 U.S. at 182.

The Supreme Court held that the "fundamental, even existential" claims described above were properly within the jurisdiction of the district courts because the claims were not "'of the type' Congress thought belonged within a statutory scheme." *Id.* at 188–89 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994)). The high court reached that conclusion by way of an initial "30,000-foot" assessment that was then vindicated by a subsequent "granular" application of the *Thunder Basin* factors, which are the factors that the Supreme Court utilizes to determine whether congressional enactment of a "special statutory review scheme" implicitly strips the district courts of jurisdiction over federal questions. *Id.* at 185–89.

The first *Thunder Basin* factor is "whether preclusion of district court jurisdiction 'could foreclose all meaningful judicial review.'" *Id.* at 190 (quoting 510 U.S. at 212–213). In *Axon*, the Supreme Court analyzed the first factor as follows.

> Yet a problem remains, stemming from the interaction between the alleged injury and the timing of review. . . . The harm Axon and Cochran allege is "being subjected" to "unconstitutional agency authority"—a "proceeding by an unaccountable ALJ." That harm may sound a bit abstract; but this Court has made clear that it is "a here-and-now injury." And—here is the rub—it is impossible to remedy once the proceeding is over, which is when appellate review kicks in. Suppose a court of appeals agrees with Axon, on review of an adverse FTC decision, that ALJ-led proceedings violate the separation of powers. The court could of course vacate the FTC's order. But Axon's separation-of-powers claim is not about that order; indeed, Axon would have the same claim had it *won* before the agency. The claim, again, is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker. And as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone. Judicial review of Axon's (and Cochran's) structural constitutional claims would come too late to be meaningful.

*Id.* at 191 (citations omitted). The Supreme Court went on to clarify the breadth of its holding.

> The limits of that conclusion are important to emphasize. The Government, in disputing our position, notes that many review schemes—involving not

only agency action but also civil and criminal litigation—require parties to wait before appealing, even when doing so subjects them to "significant burdens." That is true, and will remain so: Nothing we say today portends newfound enthusiasm for interlocutory review. Return, for example, to *Thunder Basin* and *Elgin*. There, the coal company and federal employee could both have argued that the statutory review process would subject them to greater litigation costs than their preferred suit in district court. But that would not have mattered. We have made clear, just as the Government says, that "the expense and disruption" of "protracted adjudicatory proceedings" on a claim do not justify immediate review. What makes the difference here is the nature of the claims and accompanying harms that the parties are asserting. Again, Axon and Cochran protest the "here-and-now" injury of subjection to an unconstitutionally structured decisionmaking process. And more, subjection to that process irrespective of its outcome, or of other decisions made within it. A nearer analogy than any the Government offers is to our established immunity doctrines. There, we have identified certain rights "not to stand trial" or face other legal processes. And we have recognized that those rights are "effectively lost" if review is deferred until after trial. So too here, Axon and Cochran will lose their rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over.

*Id.* at 191–92 (citations omitted).

The second *Thunder Basin* factor is whether the claim at issue is "wholly collateral" to the administrative review provisions. *See id.* at 186. The Supreme Court held that the claims in *Axon* were collateral to the relevant administrative schemes "because [the plaintiffs were] challenging the Commissions' power to proceed at all, rather than actions taken in the agency proceedings." *Id.* at 192. In rejecting the government's position to the contrary, the high court held that the second *Thunder Basin* factor, in contrast to the first *Thunder Basin* factor, does not depend upon timing considerations, such as whether an agency proceeding has already commenced or not. *See id.* at 193–94.

The third and final *Thunder Basin* factor is whether the claims fall outside the agency's expertise. *Id.* at 194–95. The Supreme Court held in no uncertain terms that issues of constitutional law, such as the separation of powers doctrine, will almost never be within the expertise of an administrative agency. *Id.*

. . .

**B.     Defendants' Arguments**

As noted, Defendants present several distinct arguments supporting their assertion that the Court lacks subject matter jurisdiction over this case. Two of those arguments depend entirely upon whether Plaintiffs' claims are analogous to those in *Axon*. First, Defendants' assertion that the Eastern District of Virginia possesses exclusive jurisdiction over administrative appeals of USPTO disciplinary decisions presupposes that this case is indeed an administrative appeal of a disciplinary decision. (*See* MTD at 8.) However, if this case is not an administrative appeal encompassed by 35 U.S.C. § 32, then that statute's forum requirement is immaterial. The determination of whether § 32 governs this lawsuit is coterminous with and inverse to the determination of whether *Axon* governs this lawsuit. Second, Defendants' contention that Plaintiffs have failed to exhaust their administrative remedies is simply another way of asserting that *Axon* does not control. Although the majority in *Axon* never used the word "exhaustion," the fundamental thrust of the opinion concerned whether it was permissible for the plaintiffs to bring suit prior to exhausting the agency process. Before proceeding to the analysis of whether *Axon* shields Plaintiffs from the forum and exhaustion requirements that would ordinarily attend a challenge to a USPTO disciplinary decision, the Court will first address Defendants' jurisdictional arguments that are not wholly dependent upon the *Axon* inquiry.

**1.     Standing**

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court" so that the judiciary remains a forum for the adjudication of legal disputes rather than an alternative to the political arena. *Id.* The Supreme Court's "cases have established that the 'irreducible constitutional minimum' of standing consists of three elements." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Defendants assert that

Plaintiffs lack standing to bring this case because only Mr. Abhyanker, and not LegalForce, was subjected to the challenged USPTO disciplinary process. (MTD at 6–7.)

Defendants cite a Ninth Circuit case for the proposition that an entity plaintiff establishes associational standing by demonstrating that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." (MTD at 6–7 (quoting *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013)).) Defendants rest their argument that LegalForce lacks standing entirely upon the third prong of the associational standing test, expressly conceding that the first prong is met and implicitly conceding that the second prong is met.

Even if Defendants were correct that LegalForce lacks standing to independently bring suit, Mr. Abhyanker's presence as a plaintiff moots the standing issue. Defendants do not assert that Mr. Abhyanker himself lacks standing to bring any of the Complaint's four claims, "and the presence in a suit of even one party with standing suffices to make a claim justiciable." *See Brown v. City of Los Angeles*, 521 F.3d 1238, 1240 n.1 (9th Cir. 2008); *see also Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993) ("The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others.").

Moreover, the Court finds that LegalForce has direct organizational standing to bring the claims in this lawsuit based upon the well-pled allegations that it (1) expended substantial resources defending Mr. Abhyanker before the USPTO, (2) encountered substantial compliance costs as a result of the USPTO's numerous discovery demands, and (3) suffered substantial reputational stigma from having its attorneys repeatedly sanctioned by the USPTO. (*See* Response at 3–7.) "Organizations can assert standing on behalf of their members or in their own right." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) (citations omitted). Plaintiffs' plausible assertion of independent injury to LegalForce's law business is sufficient to confer direct organizational standing thereon.

*See id.* at 662 (holding that "an organization has direct standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose"). The Court rejects Defendants' characterization of the harm allegedly suffered by LegalForce as "speculative." (*See* Reply at 7.) Although LegalForce's allegation of harm may ultimately prove to be unfounded, it is sufficiently well pled to confer standing to sue for relief. Thus, the Court concludes that Plaintiffs possess standing to litigate this case.

### 2. **Sovereign Immunity**

Defendants contend that the Court must dismiss this case because "Plaintiffs have failed to allege any waiver of sovereign immunity to bring suit against the government." (MTD at 10.) Although Defendants correctly state that 28 U.S.C. § 1331 does not by itself constitute a waiver of sovereign immunity, Defendants' argument nonetheless fails. In Section 702 of the Administrative Procedure Act, Congress waived the federal government's sovereign immunity regarding all claims "seeking relief other than money damages" against agencies and their personnel. *See* 5 U.S.C. § 702; *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171–72 (9th Cir. 2017). That waiver is effective as to all non-monetary claims against federal agencies, even where, as here, such claims do not arise under the Administrative Procedure Act itself. *See Navajo Nation*, 876 F.3d at 1172. As the instant lawsuit concerns only constitutional claims for non-monetary relief, Defendants enjoy no sovereign immunity.

### 3. *Axon*'s Applicability to the Present Matter

The disposition of those threshold issues tees up the real crux of this case: whether Plaintiffs' claims are sufficiently analogous to those in *Axon* such that this Court has jurisdiction to adjudicate the lawsuit outside of the administrative channels established by 35 U.S.C. § 32. As noted above, the *Axon* analysis is a tripartite inquiry. However, the second and third factors are easy to resolve here, as the claims in this case are materially identical to the claims in *Axon* insofar as the second and third factors are concerned. The Court declines to reinvent the wheel. As the analysis of the second and third factors in the

instant matter would be indistinguishable from that already conducted by the Supreme Court in *Axon*, the Court concludes that the second and third factors favor a finding of jurisdiction.[4]

However, the first factor points in the other direction. In *Axon*, the Supreme Court did not hold that district courts possessed jurisdiction to entertain constitutional claims brought outside of the ordinary agency review process simply because those claims were structural in nature. Rather, the Supreme Court held that district courts possess jurisdiction to entertain such claims only when they assert a specific type of structural harm susceptible of a particular type of structural remedy. The high court was very clear on this point. The Supreme Court opened its analysis by noting that "[r]eview of agency action in a court of appeals can alone 'meaningfully address' a party's claims." 598 U.S. at 190 (alteration omitted) (quoting *Thunder Basin*, 510 U.S. at 215).[5] The Supreme Court went on to explain that "[u]nder those statutes, Axon and Cochran can (eventually) obtain review of their *constitutional* claims through an appeal from an adverse agency action." *Id.* at 190–91 (emphasis added). Thus, the mere fact that the *Axon* plaintiffs' claims were constitutional and structural did not lead the high court to conclude that the ordinary agency review process was insufficient and that immediate review in district court was warranted. Instead, the high court rested its ultimate holding upon the interplay of the specific harm alleged and the timing of that allegation. The Supreme Court was very explicit in highlighting the importance of timing, writing that "[y]et a problem remains, stemming from the interaction between the alleged injury and the timing of review." *Id.* at 191.

The reason the Supreme Court held there to be collateral district court jurisdiction separate and apart from the jurisdiction already possessed by the federal judiciary through the agency review process was not because the agency review process was incapable of adjudicating a structural constitutional claim, but instead because the timing of that review

---

[4] Defendants' arguments to the contrary are more properly directed to the first factor of the *Axon* inquiry, as discussed below.

[5] The statutory schemes at issue in *Axon* provided for judicial review of agency action in a federal court of appeals, whereas the statute at issue here provides for judicial review in the Eastern District of Virginia, but that difference is immaterial.

- 11 -

would have rendered meaningful relief impossible. "The claim, again, is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker. And as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone. Judicial review of Axon's (and Cochran's) structural constitutional claims would come too late to be meaningful." *Id.* The high court then reiterated the importance of timing. "What makes the difference here is the nature of the claims and accompanying harms that the parties are asserting. Again, Axon and Cochran protest the 'here-and-now' injury of subjection to an unconstitutionally structured decisionmaking process." *Id.* at 192. After comparing the plaintiffs' claims to rights under immunity doctrines, the Supreme Court concluded by stating that "Axon and Cochran will lose their rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over." *Id.*

Here, Plaintiffs go through the motions of alleging a "here-and-now" injury flowing from "subjection to an illegitimate proceeding led by an illegitimate decisionmaker," but those allegations ring hollow. Plaintiffs have already been subjected to, and have actively participated in, the challenged agency proceeding for over three years. The hearing in this case commenced in March 2022, and Plaintiffs participated in that hearing, participated in follow-ups to that hearing, filed numerous motions of varying stripes, received an initial decision, moved for reconsideration of the decision, and appealed the decision. This case is thus a far cry from *Axon*, in which one plaintiff brought her constitutional claims before the operative hearing had begun and in which the other plaintiff filed suit immediately upon being charged. *See id.* at 182–83. Unlike the plaintiffs in *Axon*, Plaintiffs in the instant suit cannot rest their case upon the alleged harm of being subjected to an illegitimate process, as such subjection has already occurred, and, as the Supreme Court recognized, "[a] proceeding that has already happened cannot be undone." *See id.* at 191. Because the alleged injury that Plaintiffs complain of has already occurred and cannot be remedied, that injury cannot be the jurisdictional basis of a lawsuit seeking to deviate from the ordinary rules of agency review.

That conclusion is consistent with a recent holding from the Third Circuit, in which the court of appeals held that a litigant may not invoke *Axon* where it has already been substantially subjected to the agency proceeding that it subsequently challenges as structurally unconstitutional. *See NLRB v. Starbucks Corp.*, 125 F.4th 78, 87–88 (3d Cir. 2024). Plaintiffs endeavor to distinguish *Starbucks* on the basis that "[i]n *Starbucks*, the agency's administrative process had entirely concluded" whereas in the instant matter "[t]he case is still pending before the USPTO Director" and "[t]herefore, unlike in *Starbucks*, the constitutional harm here is ongoing." (Response ¶¶ 36–39.) Plaintiffs' attempt at distinguishing *Starbucks* from the case at bar fails, as it rests upon a misrepresentation of *Starbucks*. The Third Circuit expressly noted that the agency proceeding in *Starbucks* had *not* finally concluded. Although *Starbucks* may have involved an agency decision that was technically denominated as "final," the process writ large had not concluded, as the respondent was scheduled to "appear before an ALJ again to determine how much it owes its former employees in a remedial compliance proceeding." *See Starbucks*, 125 F.4th at 88. Here, the opposite is true. The ALJ's role in the disciplinary process is complete, and the case is no longer in his hands, as Plaintiffs have appealed his decision to the USPTO Director. Of course, the process as a whole remains ongoing, and it is possible that the USPTO Director might find merit in Plaintiffs' appeal and remand the case to the ALJ for further proceedings, *see* 37 C.F.R. § 11.56(a), but those facts do not render *Starbucks* inapplicable.

First, for the limited purpose of determining the applicability of the Third Circuit's holding in *Starbucks*, the Court perceives no significance to the presence or absence of a final decision in the disciplinary proceeding underlying this lawsuit. Whether a particular aspect of an agency proceeding is final or not has no bearing on whether a litigant has a viable claim for relief from "subjection to an illegitimate proceeding." Although the finality of an agency decision is important for purposes of administrative law, it would seem to have little significance to the analysis of whether an entire agency process is structurally unconstitutional. A proper *Axon* plaintiff could assert that subjection to an illegitimate

agency process is injurious even if a particular agency action were final, interim, interlocutory, preliminary, still under advisement, etc. The Court rejects Plaintiffs' bid to distinguish *Starbucks* on an inapt technicality. Second, as already noted and contrary to Plaintiffs' contentions, *Starbucks* involved an agency process that had concluded to a lesser degree than has the disciplinary process here. In *Starbucks*, it was a certainty that the aggrieved party would again be subjected to the challenged ALJ. Here, further subjection is simply a possibility. Therefore, *Starbucks* is not distinguishable. Moreover, it supports the Court's conclusion regarding the first prong of the *Axon* analysis described above.

Plaintiffs' other arguments in favor of jurisdiction also fail. First, Plaintiffs assert that meaningful judicial review through the normal channels is not possible because the ALJ declined to consider Plaintiffs' constitutional claims. According to Plaintiffs, that refusal precludes the Eastern District of Virginia from considering the claims on appeal because "judicial review in the Eastern District of Virginia is limited to the administrative record." (*See* Response ¶ 20.) The Court disagrees. Although Plaintiffs cite 35 U.S.C. § 32 in support of their argument, nothing in that statute restricts the Eastern District of Virginia's ability to adjudicate a constitutional claim that was properly raised before the agency but that the agency declined to entertain. The statute at issue here is materially similar to those at issue in *Axon*, and the Supreme Court held that the judicial review contemplated in those statutes was sufficient to meaningfully address the exact same claims that Plaintiffs bring here. *See* 598 U.S. at 190; 15 U.S.C. §§ 45(c), 78y(a). It bears emphasizing again that the Supreme Court's holding in *Axon* rested upon the interplay of the nature of the injury alleged and the timing of that allegation, *not* upon the competency of the ordinary agency review process to adjudicate structural constitutional claims. The fact that the ALJ in this case felt that he was not authorized to rule on his own constitutionality in no way bars the Eastern District of Virginia from contemplating the same question. The Court therefore perceives no impediment to Plaintiffs' accessing an appropriate forum. As Defendants demonstrate in their briefing, it is commonplace for the Eastern District of Virginia to hear constitutional claims. (*See* Reply at 5–6.)

Plaintiffs also argue that they have brought this lawsuit in good faith and not for the purpose of gamesmanship. (*See* Response ¶¶ 22, 34.) The Court credits that assertion, but the validity thereof does not create jurisdiction over the instant matter. That Plaintiffs sincerely believe that *Axon* permits a collateral challenge to agency action outside of the procedure Congress laid out for challenges to agency action does not make it so. Although the Court does not in any way intend to impugn Plaintiffs' candor, Plaintiffs' attempt at defending their good faith serves only to further demonstrate *Axon*'s inapplicability to this lawsuit. For instance, Plaintiffs write that:

> Plaintiffs participated in the administrative process in good faith, preserving their objections and constitutional concerns on the record, including objections to the ALJ's authority and the structure of the proceedings. It was only after receiving an initial decision that failed to address those structural concerns and compounded the due process violations that Plaintiffs recognized that meaningful relief could not be obtained within the agency.
> . . . .
> Rather than prematurely accuse the presiding ALJ of personal bias or rush to federal court, [Mr. Abhyanker] respectfully distinguished his challenge as a structural one—stating, "I'm trying to understand if the entire system of the ALJ as it's set up is unconstitutional." This demonstrates that Plaintiffs were not looking to manufacture grounds for early judicial review but instead hoped, in earnest, that the ALJ would fairly adjudicate the case despite the systemic flaws raised. By giving the benefit of the doubt and awaiting the initial decision, Plaintiffs acted with deference to the process, not delay. Only when it became clear that the initial ruling failed to address those foundational concerns—and in fact compounded due process violations—did Plaintiffs determine that meaningful relief could not be obtained within the agency.

(Response ¶¶ 34, 37 (internal citations omitted).) These statements by Plaintiffs, although intended to demonstrate *Axon*'s applicability, actually demonstrate that this lawsuit is not really concerned with the injury imposed by the allegedly unconstitutional structure of the USPTO's disciplinary process so much as it is with the specifics of the initial decision rendered by the ALJ. Although the Court does not assign dispositive, or even substantial, weight to these statements by Plaintiffs, such statements nevertheless show the distinction between a proper *Axon* claim and an improper one. Although Plaintiffs' claims might

- 15 -

ultimately have merit, they do not legitimately relate to the kind of injury that *Axon* is concerned with, as demonstrated by the fact that Plaintiffs only saw fit to abort the agency process upon determining that that process was not heading in a favorable direction.

Furthermore, the Court agrees with Defendants that the extraordinarily detailed nature of Plaintiffs' pleadings and filings indicate that this case is not truly concerned with the structural injury contemplated in *Axon*. For a set of claims that is both expressly and necessarily divorced from the underlying facts, Plaintiffs' argumentation references those facts to a surprising degree. *See Axon*, 598 U.S. at 191 ("The court could of course vacate the FTC's order. But Axon's separation-of-powers claim is not about that order; indeed, Axon would have the same claim had it *won* before the agency."). As Defendants note, "[t]he complaint's counts repeatedly restating and incorporating the allegations about the conduct of the disciplinary hearing and the rulings made therein suggests that it is as much a challenge to the hearing officer's rulings as it is to the structure of the process." (MTD at 13; *see* Reply at 4.) Moreover, Plaintiffs' insistence that they have "already suffered" the harm of subjection to an illegitimate agency process, as manifested in substantial legal fees and reputational damage, only highlights the distinction between the present case and *Axon*. (*See* Response ¶ 50.) The Court attributes this discordance to confusion about *Axon*'s proper ambit, not bad faith. And again, the Court does not rest its decision upon the somewhat contradictory nature of Plaintiffs' filings. These observations simply buttress the Supreme Court's description of what its holding in *Axon* was and was not intended to achieve.

*Axon* addressed a very particular harm and a very particular remedy, neither of which are sufficiently extant in this lawsuit. The Supreme Court specifically noted that "[t]he limits of [its] conclusion are important to emphasize." 598 U.S. at 191. This Court cannot ignore the high court's clear cabining of its opinion. As Plaintiffs have already been subjected to the agency process that they assert is unconstitutional, there is no reason that the Eastern District of Virginia cannot provide meaningful judicial review through the administrative channel that Congress created for review of USPTO disciplinary decisions.

Thus, the first *Axon* factor weighs against jurisdiction. In the case that was the subject of the *Axon* appeal, the Ninth Circuit held that, where the first factor weighs against jurisdiction and the other two factors weigh in favor, the first factor controls. *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021). Although the Supreme Court reversed the Ninth Circuit's first-factor determination, it did not disturb the Ninth Circuit's explanation of how the factors ought to be weighed when they diverge. Therefore, this Circuit still "agree[s] with the other circuits, however, that under Supreme Court precedent the presence of meaningful judicial review is enough to find that Congress precluded district court jurisdiction over the type of claims that [Plaintiffs] bring[]." *Id.*

Under *Axon*, jurisdiction in this Court is thus improper. As *Axon* constitutes an exception to the ordinary agency framework, the normal jurisdictional rules govern. Those rules preclude jurisdiction here. Under 35 U.S.C. § 32, the Eastern District of Virginia is the exclusive forum in which an aggrieved party may seek judicial review of a USPTO disciplinary decision. *See Franchi v. Manbeck*, 972 F.2d 1283, 1287–88 (Fed. Cir. 1992). That is true even where a disciplined party seeks adjudication of constitutional objections to the disciplinary process. *See Axon*, 598 U.S. at 190–91. Plaintiffs could already have obtained judicial review in the Eastern District of Virginia of the exact claims that they assert in this lawsuit, but they instead elected to voluntarily subject themselves to another iteration of agency review, this time before the USPTO Director instead of an ALJ. Nevertheless, upon the issuance of a final decision, Plaintiffs shall have the opportunity to seek judicial review in the Eastern District of Virginia according to the process that Congress has prescribed. This Court cannot disregard that congressionally enacted scheme.

## IV. Conclusion

The Court must dismiss this case for lack of subject matter jurisdiction. Such dismissal is without prejudice. Plaintiffs may refile their claims against Defendants in an appropriate forum at an appropriate procedural juncture. As the Court is dismissing this case, the Court denies as moot Plaintiffs' request for a preliminary injunction.

. . .

1    **IT IS THEREFORE ORDERED** granting Plaintiffs' Motion for Leave to File Sur-Reply (Doc. 39). The Clerk of Court is directed to file on the docket the sur-reply currently lodged at docket number 40.

**IT IS FURTHER ORDERED** granting Defendants' Motion to Dismiss (Doc. 27).

**IT IS FURTHER ORDERED** denying as moot Plaintiffs' Motion for Preliminary Injunction (Doc. 16).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this matter.

Dated this 29th day of April, 2025.

Honorable John J. Tuchi
United States District Judge