**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Legalforce RAPC Worldwide PC, *et al.*, | No. CV-24-03437-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Patent and Trademark Office, *et al.*, | |
| Defendants. | |

Two motions for reconsideration are at issue. First, Plaintiff LegalForce RAPC Worldwide PC ("LegalForce") filed a motion requesting that the Court reconsider its prior dismissal of LegalForce. (Doc. 44.) Despite "co-author[ing]" LegalForce's motion for reconsideration, (*see* Doc. 49 at 1), Plaintiff Raj Abhyanker did not join therein, as is clear from the first sentence of LegalForce's motion, which indicates that LegalForce is the sole petitioner. (Doc. 44 at 1.) Moreover, LegalForce requested an order explicitly specifying that "[t]he Court's prior dismissal of claims asserted by Mr. Abhyanker in his individual capacity remains undisturbed." (Doc. 44-1 at 2.) Notwithstanding these unequivocal signals that LegalForce's motion pertained only to LegalForce, Mr. Abhyanker has now taken the position that LegalForce's motion also sought reconsideration of the Court's dismissal of Mr. Abhyanker, never mind the fact that LegalForce's motion expressly stated the opposite. Therefore, because "the United States has since suggested that [Mr. Abhyanker] has not formally sought reconsideration," and "[t]o avoid doubt or

procedural ambiguity," Mr. Abhyanker filed his own motion for reconsideration. (Doc. 49 at 1 (internal citation omitted).)

LegalForce's motion has some merit. Thus, pursuant to Local Rule of Civil Procedure 7.2(g)(2), the Court invited the parties to submit simultaneous supplemental briefs thereon, which both LegalForce and Defendants have now filed (Doc. 47; Doc. 48). In contrast, Mr. Abhyanker's motion is meritless. The Court will therefore address Mr. Abhyanker's motion first. The Court finds both matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

Mr. Abhyanker rests his motion on "new post-judgment facts," including assertions that Defendants have "reactivated" his disciplinary proceeding after a monthslong delay and that Defendants have refused to stay such proceeding. (Doc. 49 at 1.) Mr. Abhyanker does not explain how these supposedly new facts bear upon the Court's prior Order. Nor could he. Defendants' continued prosecution of the disciplinary proceeding against Mr. Abhyanker is consistent with the Court's prior Order, not inconsistent. The Court denies Mr. Abhyanker's motion and now turns to LegalForce's motion.

The parties are familiar with the background of this case, in which Plaintiffs brought four claims against Defendants. The first claim asserts that the "Dual-Layer Removal Protections Afforded USPTO ALJs Violate Article II." (Doc. 1 at 15.) The second claim asserts that "The USPTO's Structure Violates Article III." (Doc. 1 at 16.) The third claim asserts that "The USPTO's Combined Function Structure Violates [Mr. Abhyanker's] Due Process Rights." (Doc. 1 at 19.) The fourth claim asserts that the "USPTO's Administrative Adjudication of Private Rights Violates the Seventh Amendment." (Doc. 1 at 20–21.) It is not clear from the face of the complaint which claims relate to which plaintiffs or whether all claims relate to both plaintiffs. For instance, the third claim would seem to belong only to Mr. Abhyanker, as its title indicates that it concerns only the due process rights of Mr. Abhyanker. Yet, this claim asserts that "*Plaintiffs* have no meaningful judicial review" of the claim, thereby implying that the claim belongs to Plaintiffs jointly. (*See* Doc. 1 ¶ 93 (emphasis added).) Similarly, both the second claim and the fourth claim discuss

Mr. Abhyanker's right to a jury trial under the Seventh Amendment, (*see* Doc. 1 ¶¶ 79, 110), yet nothing in the complaint indicates whether Plaintiffs conceive of this cause of action as belonging to Mr. Abhyanker alone or instead to LegalForce as well.

Defendants argued in their motion to dismiss that LegalForce lacks standing, (*see* Doc. 27 at 6–7), and Plaintiffs counterargued that LegalForce possesses standing, (*see* Doc. 31 at 3–7). In presenting these contentions, neither Defendants nor Plaintiffs delineated between the complaint's various claims. Instead, all parties appeared to view LegalForce's standing as an all-or-nothing proposition. Following the lead of the parties, the Court did not adjudicate LegalForce's standing on a claim-by-claim basis and instead wrote simply that "the Court finds that LegalForce has direct organizational standing to bring the claims in this lawsuit based upon the well-pled allegations that it (1) expended substantial resources defending Mr. Abhyanker before the USPTO, (2) encountered substantial compliance costs as a result of the USPTO's numerous discovery demands, and (3) suffered substantial reputational stigma from having its attorneys repeatedly sanctioned by the USPTO." (*See* Doc. 41 at 9.) The Court went on to explain that "Plaintiffs' plausible assertion of independent injury to LegalForce's law business is sufficient to confer direct organizational standing thereon." (Doc. 41 at 9.) "Although LegalForce's allegation of harm may ultimately prove to be unfounded, it is sufficiently well pled to confer standing to sue for relief." (Doc. 41 at 10.)

Insofar as the Court's prior Order purported to adjudicate LegalForce's standing on a blanket basis, the Court erred. "[S]tanding is not dispensed in gross." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quoting *Lewis v. Casey*, 518 U.S. 343, 358, n. 6 (1996)). Instead, the standing analysis is "claim- and relief-specific, such that a plaintiff must establish Article III standing for each of [its] claims and for each form of relief sought." *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1218 (N.D. Cal. 2014). Therefore, it is error for a district court to dispose of a standing dispute regarding a multi-claim complaint "without conducting a claim-by-claim analysis." *Garmong v. Tahoe Reg'l Plan. Agency*, 806 F. App'x 568, 571 (9th Cir. 2020). As the Court's prior Order did not conduct a

claim-by-claim analysis, and as the parties did not present claim-by-claim arguments, any generalized pronouncement of standing was necessarily erroneous.

The Court's broad language notwithstanding, it was not the Court's intent to hold that LegalForce possesses standing to pursue any specific claim. Rather, the Court's aim was to hold only that LegalForce had alleged sufficient *injury* to support some form of standing. The parties' dispute regarding LegalForce's direct organizational standing was focused upon whether LegalForce had pled sufficient injury to establish a direct interest in the outcome of this case. The Court held that LegalForce had so pled, or at the very least had so alleged in its briefing.[1] The Court does not retreat from that holding.

As the Court summarized in its prior Order, LegalForce has alleged that it has (1) expended substantial resources defending Mr. Abhyanker and other employees before the USPTO, (2) encountered substantial compliance costs resulting from the USPTO's disciplinary proceedings against its employees, and (3) suffered substantial reputational stigma from having its employees repeatedly sanctioned by the USPTO. Defendants characterized this alleged injury as the mere expenditure of resources that any law firm experiences whenever it defends any client. (*See* Doc. 37 at 7.) That argument misconstrues the harm that LegalForce has alleged. LegalForce does not argue that it possesses a financial interest in Mr. Abhyanker's disciplinary proceeding simply by virtue of the fact that Mr. Abhyanker has retained LegalForce to defend him. Rather, LegalForce asserts that it possesses a financial interest in Mr. Abhyanker's disciplinary proceeding, as well as the disciplinary proceedings of its other employees, because the federal government's allegedly biased targeting of LegalForce's employees directly threatens LegalForce as an entity. For instance, in its supplemental brief, LegalForce explains that:

> The declaration of LegalForce's Director of Finance, Jolly Matthew, confirms the depth and ongoing nature of these injuries: LegalForce has suffered direct harm including over $650,000 in legal and compliance costs

---

[1] Those two conclusions are functionally equivalent, as district courts must generally permit a plaintiff to amend its complaint if such amendment could cure a defect in standing. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).

>not just in defending [Mr. Ahbyanker] but also over a dozen of its current and former attorneys caught in parallel OED inquiries.

(Doc. 47 at 1 n.3 (internal citation omitted).)

That injury, as alleged, must be sufficient to confer standing.[2] A contrary holding would countenance a world in which the government could destroy a law firm by individually pursuing all of the attorneys that work for the law firm, without ever permitting the firm as an entity to sue in federal court to enjoin the illegal targeting of its attorneys. Article III is not so cramped.

Thus, the Court holds, as it did before, that LegalForce has pled or otherwise alleged an adequate injury in fact. Moreover, it appears undisputed that this injury is fairly traceable to Defendants' conduct. Finally, insofar as LegalForce seeks to litigate claims that the ALJs employed by the USPTO are intrinsically unconstitutional such that all of their actions are void, it would appear that the harm alleged by LegalForce is likely to be redressed by a favorable decision. Therefore, LegalForce has likely established standing to litigate the constitutionality of the administrative apparatus that has allegedly targeted Mr. Abhyanker and its other employees. At the very least, LegalForce has pled facts that entitle it to file an amended complaint curative of any standing deficiency. The Court will therefore grant LegalForce's motion for reconsideration in part, reopen this case, and reinstate LegalForce as a Plaintiff. However, as noted above, the Court expects that LegalForce will amend its complaint or lodge some other filing indicating which claims LegalForce seeks to proceed upon and what form of relief LegalForce seeks to obtain. Only then can standing be properly analyzed.

Defendants' counterargument is unavailing. Defendants contend that, irrespective of whether LegalForce possesses standing to seek to enjoin the targeting of its employees,

---

[2] The requisite showing to establish standing is commensurate with the procedural posture of the case. "Since [the elements of Article III standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Thus, because this case has not progressed beyond the pleading stage, LegalForce need only adduce "general factual allegations of injury resulting from the defendant's conduct." *See id.*

the Court lacks subject matter jurisdiction over any claim that LegalForce could bring. (Doc. 48 at 2–3.) This argument rests upon the well-recognized principle that a statute designating a judicial district as the exclusive forum for a class of claims generally divests all other districts of jurisdiction over such claims. However, LegalForce's motion is predicated upon the contention that the statute at issue in this case, 35 U.S.C. § 32, does not deprive any federal court of jurisdiction over LegalForce's claims because LegalForce, unlike Mr. Abhyanker, does not fall within the scope of the statute. (*See* Doc. 44 at 1–2 ("LegalForce is not, and has never been, a respondent in the USPTO disciplinary action. The proceeding was directed solely at [Mr. Abhyanker]. Consequently, LegalForce is not eligible to seek judicial review under 35 U.S.C. § 32, which provides for review only for parties who are 'refused recognition or subjected to discipline by the Director.'") Defendants do not meaningfully address this argument. The Court finds that LegalForce's argument has merit. As the plain text of the relevant jurisdiction-stripping statute excludes LegalForce from its ambit, its jurisdiction-stripping effect does not extend to LegalForce, at least facially. Insofar as LegalForce's claims are distinct from those of Mr. Abhyanker, which is a proposition that Defendants justifiably contest, the Court concludes that it has subject matter jurisdiction over the former.[3]

Defendants' secondary argument, which Defendants expounded upon at the Court's invitation, is that this Court should transfer this case to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). (*See* Doc. 48 at 3–6.) Although most transfers under § 1404(a) occur by way of a motion or a stipulation, district courts may also transfer cases *sua sponte*, "so long as the parties are first given the opportunity to present their views on the issue." *Pavao v. Unifund CCR Partners*, 934 F. Supp. 2d 1238, 1242 (S.D. Cal. 2013). In its Order requesting supplemental briefing on LegalForce's motion, the Court directed the parties to address the propriety of a transfer to the Eastern District of Virginia. (Doc. 46 at 2.) The basis of the Court's solicitation was the concern that LegalForce's continued

---

[3] To be clear, the Court does not modify its previous conclusion that LegalForce may not avail itself of the precise kind of temporal relief contemplated in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), as any subjection injury has already substantially occurred.

pursuit of this case is a mere subterfuge designed to (1) illegitimately derail the USPTO disciplinary proceeding against Mr. Abhyanker and (2) provide Mr. Abhyanker a second bite at the apple under the guise of an alter ego. (*See* Doc. 46 at 2 (quoting Defendants' contention that LegalForce's participation in this lawsuit constitutes a "ploy").) In particular, both Defendants and the Court were concerned with the risk that parallel adjudications of substantially similar claims brought on substantially similar facts by substantially similar parties might result in conflicting rulings. (*See* Doc. 46 at 2.) In its supplemental brief, LegalForce acquiesces to a transfer to the Eastern District of Virginia, but in doing so "LegalForce and [Mr. Abhyanker] respectfully requests [sic] the Court consider recommending or conditioning transfer on a stay of the USPTO Director's proceedings." (Doc. 47 at 3.) LegalForce did not meaningfully address the risk of duplicative or conflicting rulings, nor did LegalForce attempt to dispel the notion that its claims are merely the claims of Mr. Abhyanker brought in a pretextual fashion.

Thus, the Court finds itself in the position of being presented with claims that are seemingly facially valid but that nevertheless appear to be duplicative at best and a deliberate circumvention of a congressional scheme at worst. The Court finds that a transfer to the Eastern District of Virginia is the appropriate means of addressing this problem. Such a transfer serves the convenience of the parties and witnesses, (*see* Doc. 48 at 6), and, more importantly, it also serves the interests of justice. A district court possesses inherent authority to consider a transfer in service of interests beyond those expressly listed in § 1404(a). *Barrington Grp., Ltd. v. Genesys Software Sys., Inc.*, 239 F. Supp. 2d 870, 873 (E.D. Wis. 2003). One such interest is judicial economy, which "is a particularly important concern when two actions involving the same parties and issues are pending in different districts." *Id.* "In such situations, federal courts have the inherent power, apart from § 1404, to transfer, stay or dismiss the suit to avoid wasteful, repetitive litigation." *Id.* Another judicial interest that bears upon the propriety of a transfer is the desire to avoid duplicative and/or conflicting rulings. *See Smith v. United States Att'y Gen.*, No. CV1900017TUCFRZBGM, 2019 WL 11544460, at *2 (D. Ariz. Sept. 4, 2019) ("As part

1  of its general power to administer its docket, a district court may stay or dismiss a suit that
2  is duplicative of another federal court suit."). As this lawsuit postdates the USPTO's
3  disciplinary proceeding by several years, and as that proceeding can only be reviewed in
4  the Eastern District of Virginia, the Court elects to transfer the instant matter to that district.

5        The Court will not command or suggest that its sister district stay Mr. Abhyanker's
6  disciplinary proceeding, both because such a pronouncement would impermissibly tread
7  upon the autonomy of that court and because this Court perceives no reason why such a
8  stay is appropriate. The Court also leaves to the transferee court the resolution of the
9  question, described above, of whether LegalForce's claims are truly distinct from the
10 constitutional issues that Mr. Abhyanker has already raised in his disciplinary proceeding
11 such that LegalForce's claims do indeed fall outside of the congressionally enacted review
12 scheme embodied in 35 U.S.C. § 32.

13       **IT IS THEREFORE ORDERED** granting in part LegalForce's motion for
14 reconsideration (Doc. 44).

15       **IT IS FURTHER ORDERED** denying Mr. Abhyanker's motion for
16 reconsideration (Doc. 49).

17       **IT IS FURTHER ORDERED** directing the Clerk of Court to reopen this case and
18 reinstate LegalForce as a plaintiff. This matter remains closed with respect to
19 Mr. Abhyanker.

20       **IT IS FURTHER ORDERED** directing the Clerk of Court to transfer this case to
21 the U.S. District Court for the Eastern District of Virginia.

22       Dated this 21st day of May, 2025.

                                                Honorable John J. Tuchi
                                                United States District Judge